Roy STAFFORD, Appellant,

v.

Ora STEWARD, Appellee.

No. 3259.

Court of Civil Appeals of Texas.

Eastland.

Oct. 26, 1956.

Rehearing Denied Nov. 23, 1956.

Joseph A. Chandler, C. O. McMillan, Stephenville, for appellant.

Sam M. Russell, Stephenville, Mays & Mays, Fort Worth, for appellee.

LONG, Justice.

Ora Steward instituted this suit against Roy Stafford for damages. She alleged that on the 16th day of October, 1955, appellant, under the pretext of bringing a prospect to her home for the purpose of buying her house, came to her home while he was intoxicated; that appellant made love to her and asked her to have sexual intercourse with him, touched her leg, took her hand and tried to pull her on his lap. She sought both actual and exemplary damages. Defendant filed a general denial. A jury found that defendant committed a willful assault upon plaintiff and assessed her actual damages at $3,000 and exemplary damages at $2,000. The court entered judgment in keeping with the verdict. Stafford has appealed.

Appellee testified that she was a widow and had lived in Stephenville since 1946; that she had advertised her home for sale; that on the morning of the 16th day of October, 1955, appellant called her on the telephone and told her that he had a prospective purchaser for her place and that he would be down if she was going to be at home; that a few minutes thereafter appellant came to her home alone. Appellee further testified that she and appellant were seated in her living room when he began to make love to her and placed his hand on her leg and asked her to have intercourse with him; that she then for the first time noticed appellant was under the influence of intoxicating liquor. By reason of the advances of appellant she became frightened. Appellee testified she then made two cups of coffee, one for herself and one for appellant. She testified she thought the coffee might sober the appellant; that appellant spilled the coffee and she handed him a towel for the purpose of wiping the coffee off his clothing; that he caught her hand and tried to pull her down on his lap; that she jerked loose from him; that appellant began to doze and she left the house and went to her

neighbor's house next door. She told her neighbor that Roy Stafford was in her house and drunk as could be. Thereafter, the neighbor procured the sheriff who came to appellee's home with his deputy and removed appellant from her house, in a drunken condition, and took him to jail. Appellant thereafter pleaded guilty in the County Court to an aggravated assault upon appellee and paid a fine of $100. Appellant had a different version as to what happened. He testified that he went to appellee's home at her request; that she gave him a water glass full of whiskey, which he drank; that he passed out in her home and the next thing that he knew was when he "woke up" in the Erath County jail.

There is evidence that appellee was crying and hysterical at the time she went to her neighbor's house after the assault was made upon her by appellant. There is evidence that she was very nervous and unable to sleep for some time after this occurrence. There is evidence that she lost weight.

■ By his first point appellant contends that the trial court erred in rendering judgment for more than nominal damages. We do not agree with this contention. The rule in Texas is that damages are recoverable for mental suffering unaccompanied by physical suffering when the wrong complained of is a willful one intended by the wrongdoer to produce mental anguish or from which such result should be reasonably anticipated as a natural consequence. Davidson v. Lee, Tex. Civ.App., 139 S.W. 904 (Writ Ref.); Texas & Pac. Ry. Co. v. Jones, Tex.Civ. App., 39 S.W. 124 (Writ Ref.); Houston, E. & W. T. R. Co. v. Perkins, 21 Tex. Civ.App. 508, 52 S.W. 124; Leach v. Leach, 11 Tex.Civ.App. 699, 33 S.W. 703 (Writ Ref.). The facts in this case are sufficient to sustain a judgment for more than nominal damages.

■ By his fourth point appellant complains of the action of the trial court in refusing to grant him a new trial because of improper remarks by counsel for appellee in his closing argument to the jury. Appellant's complaint is that certain portions of said argument were inflammatory and prejudicial. No objection was made to the argument at the time it was made. The question was first raised on motion for a new trial. The entire closing argument of counsel for appellee is brought up by a proper bill of exception, without qualification. The part of the argument we deem most inflammatory and prejudicial is that in which counsel appealed to the jury to render a large verdict against the appellant as a protection to their own homes, which is as follows:

"Then down to the law as submitted to you in Special Issue No. 4. From a preponderance of the evidence what sum of money, if any, do you find should be awarded to plaintiff, Ora Steward, as exemplary damages? In this connection you are instructed that by the expression 'exemplary damages' is meant such sum of money as in your judgment the law should allow. That leaves it again up to you the punishment for going down and violating the sanctity of her home. And I say to you, gentlemen, *if it had been my home a $100,000.00 exemplary damages wouldn't pay it.* It wouldn't be enough to punish a man that's got no moral respect for the wife that he lives with, and a friend of a poor widow woman down there to go down and violate the sanctity of that home, the dearest treasure in the world of hers, and try to debauch her of that which means more to her than life itself. *Do you think you ought to add $50,000.00 to it as exemplary damages?* It wouldn't be excessive in my humble opinion, gentlemen, under the facts in this case. So I say to you that you can answer that in what you think he ought to be punished for violating the sanctity of her home, trying to rob her of that which does not enrich him,

trying to satisfy the lust of the flesh, but made her poor indeed, and give her what sum you think that he would be punished under No. 4.

"Gentlemen, my time has expired, I'm sorry. I wish I had some more but I can't; it's gone. I want to close, as I said in the beginning, that when the sanctity of the home is gone America is gone. Our country is just a collection of homes. That makes our country. And when they are not protected and shielded from invasion, then where are we going to. *Your homes and my homes are sanctity.* The sanctity to us means more to us than anything. *We* want them protected. *We* want to live in a land of law. And say to Mr. Stafford, 'Mr. Stafford, you had no right to go down there and try to rob this woman of that which is dearer to her. It don't enrich you but makes her poor from here out. You had no right to do it. You told her that you were able to do so much for her.' Gentlemen make him keep his word." (Italics ours.)

After appealing to the jury to render a verdict first for $100,000 and then for $50,-000, exemplary damages, counsel said to the jury: "Our country is just a collection of homes. That makes our country. *And when they are not protected and shielded from invasion, then where are we going to? You have a case here that you can do it. Your homes and my homes are sanctity. The sanctity to us means more to us than anything. We want them protected.*" This was a direct appeal to the members of the jury to render a large verdict against appellant as a protection of their own homes. Counsel, in a different connection, had told the jurors that he would like to talk to the jurors about their wives but that he couldn't, that it was improper; and then proceeded to talk about his wife. It was, in effect, an appeal to the jurors to protect their wives by rendering a big verdict against the defendant. They respond-

ed with a verdict which was very large under the circumstances. The argument was highly inflammatory and prejudicial. There is nothing as dear to the heart of a man as his home. In our opinion the fervent appeal by eminent counsel to the jury to protect their wives by rendering a large verdict was very harmful to appellant and no instruction to the jury could have removed its harmful effect. Judge Calvert, speaking for the Supreme Court in Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858, laid down the following rule:

"The true test is the degree of prejudice flowing from the argument— whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Rules 434 and 503, Texas Rules of Civil Procedure."

In applying this test we are required under the law to look to the entire record and to determine therefrom whether the argument was reasonably calculated to cause and probably did cause the rendition of an improper verdict. The evidence discloses the appellee sustained no bodily injury as a result of the assault committed upon her by appellant. She did not require the services of a doctor. She took no medicine under the direction of a doctor. Appellant used no force upon appellee. There is evidence that appellee lost weight after the assault, but there is no medical testimony showing that the assault was the cause of her losing weight. There is no medical testimony of any nature in the record.

The jury rendered a verdict against the appellant for $3,000 actual damages and $2,000 punitive damages. When we consider the record as a whole, it is our considered opinion that the argument about which complaint is made was of such a prejudicial and inflammatory nature that

it was reasonably calculated to cause and probably did cause the rendition of an improper verdict.

There is other argument of counsel which we believe to be improper but in the view we take of the case it is unnecessary for us to write thereon. We believe the improper argument requires a reversal of the judgment. It is so ordered. The judgment is reversed and the cause remanded.